## Case No. 16,879.

### In re VAN TUYL.

[3 Ben. 237; 2 N. B. R. 579 (Quarto, 177); 1 Chi. Leg. News, 326.] [1]

District Court, S. D. New York. May 12, 1869.

EXAMINATION OF BANKRUPT'S WIFE—FAILURE TO ATTEND—DISCHARGE.

Where an order was made by a register requiring the attendance of a bankrupt's wife before him, to be examined in relation to the bankruptcy, which order was served on the bankrupt, but not on his wife, and she failed to attend: *Held*, that, unless the bankrupt should prove, to the satisfaction of the court, that he was unable to procure her attendance, the register would not be warranted in certifying conformity, and the bankrupt would not be entitled to his discharge.

During the proceedings in this case, the register, on the 4th of September, 1868, issued an order requiring the wife of the bankrupt to attend before him, and be examined in relation to the bankruptcy. She did not obey. The register thereupon certified to the court the questions, whether the order was properly granted, and whether, the order having been served upon the bankrupt, but not upon his wife, the bankrupt could obtain a discharge, in the absence of proof that he was unable to procure his wife's attendance.

## Case No. 16,880.

### In re VAN TUYL.

[1 N. B. R. 636 (Quarto, 193); 1 Am. Law T. Rep. Bankr. 123.] [1]

District Court, S. D. New York. June 13, 1868.

EXAMINATION OF BANKRUPT — IRRELEVANT QUESTIONS.

A bankrupt having testified that he is not the owner of certain property, questions relating to the identity of the owner, duration, extent, and character of the ownership of that property, are irrelevant. Questions relating to the value of furniture and fixtures, and whether a certain person or persons do not own certain property, are, unless the bankrupt is in both instances the owner, irrelevant. All questions which on their face relate to property that does not belong to the bankrupt, are irrelevant.

The undersigned, register in bankruptcy, having in charge the proceedings in this bankruptcy, hereby certifies, that on the 5th day of June, 1868, on the application of James M. Tighe, the assignee of the estate and effects of the said bankrupt, the undersigned granted and issued an order requiring Andrew P. Van Tuyl, the bankrupt above named, to attend before the undersigned on the 8th day of June, 1868, at eleven o'clock in the forenoon, to submit to the examination required by the 27th section of the bankrupt act. That on the said 8th day of June,

---

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission. 1 Chi. Leg. News, 326, contains only a partial report.]

[2] [From 2 N. B. R. 579 (Quarto, 177).]

[1] [Reprinted from 1 N. B. R. 636 (Quarto, 193), by permission. 1 Am. Law T. Rep. Bankr. 123, contains only a partial report.]

1868, the said Andrew P. Van Tuyl attended in person, and by Mr. Brown his counsel, before the undersigned, and the said assignee by Mr. Watson his counsel also attended; that the said Andrew P. Van Tuyl having taken the oath hereto annexed, the examination of the said Andrew P. Van Tuyl was proceeded with. That the said examination of the said Andrew P. Van Tuyl is hereto annexed, subscribed by the undersigned, and in the course of the said examination, the questions arose which are set forth in the said examination hereto annexed:

Andrew P. Van Tuyl, the bankrupt above named, being duly sworn and examined pursuant to the order of the court, deposes and says:

"Q. Where do you reside, and who owns the house? A. I reside at 160 Hewes street, Brooklyn. I do not own the house.

"Answer objected to as not responsive to the question. Question objected to.

"Q. Do you know who does own the house you live in? A. I think I do.

"(1) Q. Will you state who does own that house? A. No, sir, unless compelled to. Q. (By Mr. Watson.) Why not? A. Because I do not wish to involve others in my troubles.

"Mr. Watson, on behalf of the assignee, insists upon an answer, and Mr. Van Tuyl declines to answer as to who owns the house. Mr. Watson asks that the question may be certified to the court.

"(2) Q. Does your wife own the house you live in? A. I decline answering that question.

"Mr. Watson, on behalf of the assignee, insists upon an answer. and Mr. Van Tuyl declines to answer as to whether his wife owns the house. Mr. Watson asks that the question may be certified to the court.

"(3) Q. If you know, how long has the present proprietor owned the house you live in?

"Question objected to as to form.

"A. I decline answering that question.

"Mr. Watson insists upon an answer, and asks that the question may be certified to the court.

"Q. Have you ever owned the house you now live in? A. No, sir. Q. How long have you lived in it? A. About two years. Q. Have you ever paid any rent for it, if so, to whom, and how much? A. I have never paid any rent for it.

"(4) Q. State, as near as you can, the value of that house?

"Question objected to as irrelevant.

"A. I decline answering it, as irrelevant.

"Mr. Watson insists upon an answer, and asks that the question may be certified to the court.

"(5) Q. State as nearly as you can the value of the furniture and fixtures in the house you live in?

"Question objected to, as to form and matter.

"A. I decline answering, as the question is irrelevant.

"Mr. Watson insists upon an answer, and asks that the question may be certified to the court.

"Q. Have you ever owned any interest in the house you live in, or in the furniture and fixtures in that house? A. No, sir, except what has been set forth in my schedule. Q. What is your profession, business, or occupation? A. I am clerk for my brother, De Witt C. Van Tuyl. Q. In what business? State fully. A. Manufacturer and dealer in iron foundry materials at 273 Cherry street, New York. Q. Are you engaged in any real estate transactions; if so, how and in what capacity? Please state fully. A. I am not engaged in any real estate transactions. Q. Have you in any way been connected with real estate transactions, or business, either as agent or principal within the last year? A. Not that I remember of, except the land that was put into the schedule. Q. Have you, within that time, had anything to do with renting property? A. No, sir. Q. Do you keep, or have you recently kept, a carriage? A. I have not.

"(6) Q. Has any one in your family kept horses and a carriage recently?

"Question objected to.

"A. I decline to answer.

"Mr. Watson insists upon an answer, and asks that the question may be certified to the court.

"(7) Q. Does your wife, or any member of your family, now keep horses and a carriage, which you are in the habit of using?

"Question objected to.

"A. I decline answering.

"Mr. Watson insists upon an answer, and asks that the question may be certified to the court.

"Q. Have you any interest in any real estate, or have you disposed of any such interest within the last year, if so, what and to whom? A. I have no interest in any real estate, nor have I disposed of any within the last year, except what is specified in my schedule, that I know of. Q. State the full name of your wife, and of any adult child, if any you have. A. My wife's name is Elizabeth. I have no adult children.

"(8) Q. Is your wife possessed of any property, if so, what property? State fully.

"Question objected to.

"A. I decline answering.

"Mr. Watson insists upon an answer, and asks that the question may be certified to the court.

"Q. Have you sold any property to any person, within the last year, which is now possessed by your wife? A. No.

"(9) Q. Is not your wife the reputed owner of real estate and personal property to the amount of forty or fifty thousand dollars?

"Question objected to.

"A. I decline to answer.

"Mr. Watson insists upon an answer, and asks that the question may be certified to the court.

"(10) Q. Are you not now, and have you not recently been acting as the reputed agent of your wife in business transactions? A. I have not acted as my wife's agent in any transaction wherein I had any personal interest. Q. Question repeated.

"The bankrupt refuses to make any other answer.

"Mr. Watson insists upon an answer, and asks that the question may be certified to the court.

"Q. In what business, or occupation, were you engaged at the time of incurring the indebtedness represented in your schedule, or a major part of it? A. I was engaged in the foundry material business. Q. Is it the same place, and the same business you are now employed in as clerk? A. Yes. Q. When did you dispose of that business, to whom, and for what price? A. My factory was burned and all the contents to the extent of all I was worth, and left me with these debts unsatisfied. This fire occurred in 1857. Q. Did you collect any insurance, if so, how much? Did you own the land, if so, when and to whom did you dispose of it? A. I did not collect any insurance. I did not own the land. Q. How long have you been clerk for your brother; at what salary; what is his name? A. I have been clerk for my brother since the 1st of January, 1867. My salary is twenty dollars a week. His name is De Witt C. Van Tuyl. Q. Does your brother take any personal part in the management of the business? A. He does. Q. Was the property spoken of as burned insured? if so, for how much, and in what companies; what became of the insurance money? A. It was insured in the Hamilton Insurance Company of New York, for two thousand dollars; in the Merchants' Insurance Company of Philadelphia, for two thousand dollars; and the Union Insurance Company of Athens, Pennsylvania, for fifteen hundred dollars; this is all, to the best of my recollection. The Hamilton insurance for two thousand dollars was assigned to Henry Young for the benefit of creditors. The other two companies failed, and have never paid anything. Q. Why do you not pay rent for the house you live in? A. The owner allows me the use of it without charge.

"(11) Q. Who do you refer to as the owner? "Question objected to.

"A. I decline to answer.

"Mr. Watson insists upon an answer, and asks that the question may be certified to the court.

"(12) Q. Do you refer to your wife as owner? "Question objected to.

"A. I decline answering.

"Mr. Watson insists upon an answer, and asks that the question may be certified to the court.

"(13) Q. Is not your wife in the receipt of a large income, amounting to thousands of dollars annually, from rents, dividends and other sources?

"Question objected to.

"A. I decline answering.

"Mr. Watson insists upon an answer, and asks that the question may be certified to the court."

Adjourned to Thursday, June 11, 1863, at 11 a. m.

The foregoing examination taken, and proceedings had before me, 8th June, 1868.

ISAAC DAYTON, Register.

Mr. Watson, for assignee.
Mr. Brown, for bankrupt.

BLATCHFORD, District Judge. The bankrupt having stated that he does not own the house he lives in, questions 1, 2, 3, 4, 11 and 12 are irrelevant. Question 5 is irrelevant, unless the bankrupt owns the furniture and fixtures named in it. Questions 6 and 7 are irrelevant, unless the bankrupt owns or has kept the horses and carriage referred to. Questions 8, 9, 10, and 13 on their face relate to property which is not the property of the bankrupt, and are, therefore, irrelevant. The clerk will certify this decision to the register, Isaac Dayton, Esq.

[See Cases Nos. 16,881 and 16,879.]